**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DOWC PROVIDER SERVICES, LLC and DOWC ADMINISTRATION SERVICES, LLC, | Civil Action No.: 23-3642 |
| Plaintiffs, | **OPINION & ORDER** |
| v. | |
| CORLEY NISSAN, LLC, et al., | |
| Defendants. | |

**CECCHI, District Judge.**

Before the Court is a motion by defendants Eddie B. Corley, Sr. and Gladys M. Corley ("the Corleys") to vacate the clerk's entry of a default judgment against them and to set aside the related entry of default. ECF No. 16; *see also* ECF No. 16-1 ("Br."). Plaintiffs DOWC Provider Services, LLC and DOWC Administration Services, LLC ("Plaintiffs") opposed the motion (ECF No. 19 ("Opp.")), and the Corleys replied. ECF No. 21 ("Reply"). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Corleys' motion is granted.

I.      **BACKGROUND**

A.      **The Corleys**

Over the course of several decades and beginning in 1982, Eddie B. Corley, Sr. ("Eddie Sr.") owned and operated various car dealerships in New Mexico. ECF No. 16-2 ¶¶ 25–34. Eddie Sr. owned some of these dealerships indirectly through Corley Automotive Group, Inc. ("Corley Automotive"), an entity in which he held an 80% stake, with his and Gladys M. Corley's ("Gladys") eight children splitting the remaining 20%. *Id.* ¶¶ 25, 29. Among the dealerships started by Eddie Sr. and owned by Corley Automotive was Corley Nissan, LLC ("Corley Nissan"),

1

which he opened in 1996. *Id.* Eddie Sr. held a majority share of Corley Nissan and the Corleys' daughter Debora M. Money ("Debora") owned the remaining minority share. *Id.* ¶¶ 11, 29

In or around 1999 or 2000, Eddie Sr.'s health began to decline. *Id.* ¶ 34. And as his health declined over the ensuing years, so did his involvement in his various car dealerships. *Id.* ¶¶ 27–29, 34. By 2016, Eddie Sr. had little to no role in Corley Nissan's operations despite continuing to own a majority interest through Corley Automotive. *Id.* ¶ 29. As of 2020, when the events giving rise to this lawsuit began, Eddie Sr., who was then in his mid-eighties, "had been retired from the automobile dealership business for several years." *Id.* ¶¶ 3, 34.

Gladys, who was also in her eighties in 2020, was "never involved with Eddie Sr.'s dealerships." *Id.* ¶¶ 3, 35. Additionally, she has been unable to care for herself "for many years" as she was diagnosed with a progressive form of dementia in February 2015. *Id.* ¶ 35.

### B.    The Contracts at Issue

Plaintiffs sell and administer finance and insurance products for the automotive industry. ECF No. 1 ("Compl." or "Complaint") ¶ 14. In October 2020, Plaintiffs entered into a "Producer Agreement" with Corley Nissan, K&T, LLC ("K&T"), and Corley Automotive (together, the "Defendant Entities"), whereby they agreed to pay for and sell Plaintiffs' products. *Id.* ¶ 17. K&T was 100% owned by Kaul D. Corley, Sr. ("Kaul")—one of the Corleys' children—and Kaul's wife. ECF No. 16-2 ¶¶ 4, 9, 32.

The parties subsequently entered into additional agreements in December 2020 and December 2021 whereby the Defendant Entities would pay for and sell a minimum of Plaintiffs' products per quarter (the "Quarterly Minimum Requirement"), and Plaintiffs would advance expected profits from the sale of their products. Compl. ¶¶ 19–21. According to the Complaint, Debora, Kaul, Eddie Sr., and Gladys personally guaranteed the Defendant Entities' payment to Plaintiffs "for any amounts due and owing" under these contracts. *Id.* ¶¶ 23, 30.

2

Eddie Sr. and Gladys, however, claim that they did sign the guarantees, which were executed using their electronic signatures. *See* ECF No. 16-2, Ex. A. At the time of their purported electronic signatures, the Corleys were not using any email address from which they could have received the guarantees. ECF No. 16-2 ¶¶ 40–41. Rather, they believe that Kaul signed the guarantees on their behalf without authorization, as he has done so in another instance in connection with an unrelated loan agreement. *Id.* ¶¶ 42–45. Plaintiffs assert that the guarantees were actually transmitted to Carolyn Corley ("Carolyn"), another one of the Corleys' daughters, who electronically executed the documents. ECF No. 19-1 ¶¶ 9–10 & Ex. A. Because Carolyn was designated as a co-trustee of her parents' trust in the event that either Eddie Sr. or Gladys could not serve as a co-trustee, ECF No. 16-2 ¶ 13, Plaintiffs maintain that Carolyn had the authority to execute contracts on their behalf. ECF No. 19-1 ¶ 11.

In December 2021, the Defendant Entities allegedly defaulted on the underlying agreement by failing to remit payment for sales of Plaintiffs' products and by failing to satisfy the Quarterly Minimum Requirement. Compl. ¶¶ 24–26. As a result, Plaintiffs and the Defendant Entities entered into an amended agreement in February 2022 that both reduced the limit of the advance available to the Defendant Entities and reduced the Quarterly Minimum Requirement. *Id.* ¶¶ 27–29. Eddie Sr. and Gladys purportedly guaranteed the amended agreement personally. *Id.* ¶ 30.

In May 2022, the Defendant Entities again defaulted under the amended agreement. *Id.* ¶ 31. Although Plaintiffs notified the Defendant Entities that they were in default, they did not remedy the issue. *Id.* ¶¶ 32–35. According to the Complaint, the Defendant Entities' repeated defaults resulted in Plaintiffs suffering damages of $1,957,235.02. *Id.* ¶ 36. Plaintiffs initiated this matter in July 2023 to recover these damages, including by asserting claims for breach of the personal guarantees against Eddie Sr. and Gladys. *See id.* ¶¶ 37–71.

3

### C.      Plaintiffs' Attempts to Serve the Corleys

After filing this lawsuit, Plaintiffs attempted to serve Eddie Sr. and Gladys over the course of August and September 2023.  They initially tried to serve the Corleys at their home in New Mexico.  ECF No. 19-1 ¶¶ 14–18.  An independent process server made five unsuccessful attempts at 1000 North Highway 605, Milan, New Mexico 87021.  *Id.* ¶ 14.  The Corleys state that this is not their home address, as they actually live at 1000 North Highway 53.[1]  ECF No. 16-2 ¶¶ 22–23.  Plaintiffs assert that they obtained the apparently incorrect home address from financial statements allegedly provided by the Corleys in connection with the guarantees.  ECF No. 19-1 ¶ 15.  Further, this address was also associated with a PO Box that was registered in the Corleys' name.  *Id.* ¶ 16 & Ex. C.  As with the purported home address, Plaintiffs appear to have identified that PO Box from the guarantee documents.  *See* ECF No. 16-2, Ex. A; ECF No. 19-1, Ex. B.  But again, the Corleys assert that they did not fill out those documents.  ECF No. 16-2 ¶¶ 38–45.

Plaintiffs next attempted to serve Eddie Sr. and Gladys at one of the car dealerships.  ECF No. 19-1 ¶ 19.  The sales manager informed the process server that "Eddie [Sr.] and Gladys Corley no longer come to the dealership."  *Id.*, Ex. E.  The process server then spoke with the general manager, one of the Corleys' other daughters, who stated that Gladys was "89 years old and [had] severe dementia and that she can't come to the dealership."  *Id*.  She added that she could ask her brother to bring Eddie Sr. to the dealership, but that he was also very old and that he was "in a fragile state," did not drive, and could "barely walk/see."  *Id*.  Eddie Sr. was never brought to the dealership, although it is unclear whether his daughter actually asked her brother to do so.  *Id*.

Following these failed attempts, Kaul allegedly "agreed to accept service on his and his parents' behalf."  *Id.* ¶ 20.  On September 21, Plaintiffs' counsel emailed Kaul and his attorney

---

[1] 1000 North Highway 53 is apparently the same as 1000 North Highway 65.  ECF No. 21-1 ¶ 3.

4

copies of the summons and complaint for Kaul, Eddie Sr., and Gladys. *Id.* ¶ 21. The email stated "[p]lease confirm receipt and your acceptance on behalf of yourself, Eddie Corley Sr. and Gladys Corley. If you will not accept service on behalf of Gladys and Eddie [Sr.], please provide me with an address at which I can have them served." *Id.*, Ex. F. Although Plaintiffs' counsel received confirmation that the email was delivered, *id.*, there is no indication that Kaul or his attorney responded with confirmation that they would accept service on the Corleys' behalf.

After sending this email, Plaintiffs further attempted service by mail. In their affidavit of service and request for a default, they indicate that they sent the summons and complaint by regular mail on September 28, 2023. ECF No. 8 ¶¶ 26–27; ECF No. 9-2 ¶¶ 26–27. However, Plaintiffs state in a declaration accompanying their opposition to the instant motion that they sent the documents by certified mail on September 21, 2023, though the receipts provided are dated September 28. ECF No. 19-1 ¶ 22 & Ex. G. Elsewhere, Plaintiffs state that "[n]either the certified mail nor regular mail was" returned as undeliverable. *Id.* ¶ 22. Further, the mail was sent to 1000 North Highway 605, Milan, New Mexico 87021, *id.*, which the Corleys assert is not their home address. ECF No. 16-2 ¶¶ 22–23. Additionally, the certified mail receipts were not signed by the Corleys. ECF No. 19-1, Ex. G.

### D. Procedural History

On October 18, 2023, Plaintiffs filed both an affidavit of service and a request for an entry of default under Federal Rule of Civil Procedure 55(a), as all defendants had failed to appear. ECF Nos. 8–9. The clerk then entered a default against all defendants. Shortly thereafter, Plaintiffs moved for a clerk's entry of a default judgment under Rule 55(b)(1), asserting that such a judgment

was proper as the damages they sought were for a sum certain. ECF No. 11.[2] The clerk then entered a default judgment in favor of Plaintiffs that provided that defendants, including Eddie Sr. and Gladys, were jointly and severally liable for approximately $2 million in damages and costs. ECF No. 12.

## II.   DISCUSSION

### A.   Motion to Vacate the Default Judgment Under Rule 60(b)(4)

A court may relieve a party from a void judgment under Federal Rule of Civil Procedure 60(b)(4). *De Lage Landen Fin. Servs., Inc. v. Topeka Hosp., LLC*, No. 22-1834, 2023 WL 2415881, at *2 (E.D. Pa. Mar. 6, 2023). And "i[t] is well-established that a default judgment entered when there was no proper service of the complaint is void." *Braverman Kaskey, P.C. v. Toidze*, No. 09-3470, 2013 WL 6095679, at *14 (E.D. Pa. Nov. 19, 2013), *aff'd*, 599 F. App'x 448 (3d Cir. 2015); *see also Ipromoteu, Inc. v. Sasco New Jersey, Inc.*, No. 20-20529, 2024 WL 278570, at *2 n.3 (D.N.J. Jan. 25, 2024) ("The Third Circuit . . . disfavors defaults or default judgments, preferring 'doubtful cases to be resolved in favor of the party moving to set aside the default [judgment] . . . so that cases may be decided on their merits.'" (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194–95 (3d Cir. 1984))). The Corleys seek to vacate the default judgment against them on the grounds that they were never properly served in this matter.

### i.   *Plaintiffs Did Not Properly Serve the Corleys*

Federal Rule of Civil Procedure 4(e) governs service in federal courts. Rule 4(e)(1) permits service by following state law for serving a summons in the courts of general jurisdiction in the

---

[2] Plaintiffs omitted Corley Nissan from their motion for a default judgment because Corley Nissan had recently filed for Chapter 11 bankruptcy protection. ECF No. 11.

state where the district court is located or where service is made.  Thus, service on Eddie Sr. and Gladys could be effectuated in accordance with the laws of New Jersey or New Mexico.  *Rehman v. Etihad Airways*, No. 19-653, 2019 WL 12095413, at *6 (M.D. Pa. Nov. 14, 2019), *report and recommendation adopted*, 2021 WL 780302 (M.D. Pa. Mar. 1, 2021).  Additionally, under Rule 4(e)(2), a party can effectuate service by (A) delivering a copy of the summons and complaint to the individual personally, (B) leaving a copy of those documents at the individual's residence with someone of suitable age who resides there; or (C) delivering a copy of each to an authorized agent.

Plaintiffs bear the burden of proving proper service of process.  *See De Lage Landen Fin. Servs., Inc.*, 2023 WL 2415881, at *2.  Although Plaintiffs' efforts to personally serve Eddie Sr. and Gladys failed, they contend that service was still proper for three reasons.  First, Plaintiffs assert that Kaul affirmatively represented that he could accept service on his parents' behalf and then did so over email.  Opp. at 4–5.  Second, they contend that they properly served Eddie Sr. and Gladys by mail.  *Id.* at 5.  Third, Plaintiffs argue that Eddie Sr. and Gladys were on notice of this litigation and the default judgment through Corley Nissan's bankruptcy proceedings.  *Id.*  Plaintiffs have failed to meet their burden to show that service of process was proper under any of these methods.

First, the record does not demonstrate that Kaul was authorized to accept service on his parents' behalf.  "[S]ervice upon an agent tends to be strictly construed, requiring an actual appointment for the specific purpose of receiving process."  *Olejar v. Lab'y Corp. of Am. Holdings*, No. 25-14009, 2026 WL 1480403, at *2 (D.N.J. May 27, 2026) (alteration in original) (citation omitted).  "[P]laintiff has the burden of showing that an alleged agent has specific authority, express or implied, for the receipt of process."  *Id.* (citation omitted); *see also State Sav. & Loan Ass'n of Lubbock v. Anderson*, 747 P.2d 253, 254 (N.M. 1987) (stating that service of process on

an agent is permissible but "it must be made to appear that such agent was authorized to bind his [principal] by the acceptance of process" (citation omitted)).

The Corleys state that Kaul had no authorization to accept service on their behalf. ECF No. 16-2 ¶¶ 9–18. Plaintiffs, however, assert that one of their employees contacted Kaul in September 2023 and "confirmed that Kaul would accept service of the summons and complaint for himself, Eddie [Sr.], and Gladys," ECF No. 9-2 ¶ 22, and thus, Kaul had "apparent authority" to accept service. Opp. at 4. But the creation of any agency relationship is dependent on the words or conduct of the principal, and an agent "cannot by his own acts imbue himself with apparent authority" to act on the principal's behalf. *Douris v. Hopewell Twp.*, No. 10-2650, 2012 WL 481177, at *3 (D.N.J. Feb. 14, 2012) (citation omitted); *John D. Arnold Fam. Ltd. P'ship v. Delgadillo*, No. 28,231, 2010 WL 3971763, at *3 (N.M. Ct. App. Jan. 5, 2010) ("To establish apparent authority, the relying party must base the relationship upon words or acts of the principal, and not the representations or acts of the agent." (citation omitted)). Therefore, Kaul's representation that he could accept service on his parents' behalf was insufficient to establish his authorization to do so. And because he lacked such authorization, Plaintiffs' service of process on Kaul for Eddie Sr. and Gladys was ineffective. *See Pearah v. Intercontinental Hotel Grp. PLC*, No. 15-7354, 2016 WL 6462073, at *2 (D.N.J. Oct. 27, 2016); *OneBeacon Ins. Grp. v. FNF Props. LLC*, No. 10-142, 2010 WL 11618992, at *3–4 (D.N.M. Nov. 17, 2010).[3]

Second, Plaintiffs' efforts to serve Eddie Sr. and Gladys by mail were defective. Both New Jersey and New Mexico permit service by mail. In New Jersey, service by mail on an out-of-state party, as here with the Corleys who were located in New Mexico, is permissible "if the plaintiff:

---

[3] Additionally, the record does not show that Kaul did in fact accept service on his parents' behalf. Plaintiffs' submission only shows that they emailed Kaul to ask him to accept service and that the email was delivered, not that Kaul responded and accepted. ECF No. 19-1, Ex. F.

(1) mails a copy of the summons and complaint by registered or certified mail, and (2) mails a copy by ordinary mail." *Wolde-Meskel v. Klausz*, No. A-0608-09T2, 2012 WL 1288748, at *7 (N.J. Super. Ct. App. Div. Apr. 17, 2012) (citing N.J. Ct. R. 4:4-4(b)(1)(C)). Plaintiffs indicated in their affidavit of service and request for a default that they sent the summons and complaint by regular mail on September 28, 2023. ECF No. 8 ¶¶ 26–27; ECF No. 9-2 ¶¶ 26–27. Then, in a declaration accompanying their opposition to the instant motion, they state that they sent the documents by certified mail on September 21, 2023, though the receipts provided are dated September 28. ECF No. 19-1 ¶ 22 & Ex. G. Elsewhere, Plaintiffs state that "[n]either the certified mail nor regular mail was" returned as undeliverable. *Id.* ¶ 22. Beyond Plaintiffs' inconsistent description of their service by mail attempts, the Corleys submit that Plaintiffs mailed the summons and complaint to the wrong address.[4] *See* ECF No. 16-2 ¶¶ 22–23; ECF No. 21-1 ¶ 3. Given that Plaintiffs have provided conflicting information about whether they served by certified and ordinary mail concurrently, and that the Corleys insist that the address used for service by mail was incorrect, Plaintiffs have not met their burden to establish effective service under New Jersey

---

[4] Plaintiffs contend that they obtained the address they used from personal financing statements provided by Eddie Sr. and Gladys in connection with the guarantees at issue in the Complaint. ECF No. 19-1 ¶ 15 & Ex. B. They also state that the local postmaster confirmed that this address matched the mailing address associated with a PO Box registered to Eddie Sr. and Gladys. *Id.* ¶ 16 & Ex. C. But Defendants maintain that they did not execute those documents and so would not have provided that information. *See* Br. at 1–2; ECF No. 16-2 ¶¶ 38–45. Additionally, Plaintiffs appear to have found that PO Box from those same documents. *See* ECF No. 16-2, Ex. A; ECF No. 19-1, Ex. B. Thus, the record does not suggest that Eddie Sr. and Gladys provided these addresses to Plaintiffs and thus that they were attempting to evade service by misleading Plaintiffs about where they lived. *See Prodigy Fin. CM2021-1 DAC v. Kurt*, No. 25-15163, 2025 WL 3443307, at *1–4 (D.N.J. Dec. 1, 2025) (noting that the defendant had refused to provide an updated mailing address and permitting alternative service by email); *Marks & Sokolov, LLC v. Mireskandari*, No. 13-3152, 2015 WL 1133788, at *8–9 (E.D. Pa. Mar. 11, 2015) (denying a motion to vacate a default judgment where the defendants "willfully attempted to evade service . . . by providing what turned out to be false addresses"), *aff'd sub nom.*, *Marks L. Offs., LLC v. Mireskandari*, 704 F. App'x 171 (3d Cir. 2017).

Rule 4:4-4(b)(1)(C). *See Granger v. Am. E-Title Corp.*, No. 10-4627, 2013 WL 1845338, at *12 (D.N.J. Apr. 10, 2013) (finding that the plaintiff had failed to meet his burden of establishing effective service by mail where the mailing was sent to the wrong address), *report and recommendation adopted*, 2013 WL 1845144 (D.N.J. May 1, 2013); *Wolde-Meskel*, 2012 WL 1288748, at *7 (finding service by mail ineffective because the court could not "determine if any ordinary mailing was accomplished in addition to certified mail"); *Signs by Tomorrow-USA, Inc. v. G.W. Engel Co.*, No. 05-4353, 2006 WL 2224416, at *4 (D.N.J. Aug. 1, 2006) (finding service by mail ineffective because the evidence did not show that "service was simultaneously made by both certified and ordinary mail").

In New Mexico, service by mail is permissible provided that the party "signs a receipt for the envelope or package containing the summons and complaint" and is deemed "complete on the date the receipt is signed." N.M. R. Civ. P. 1-004E(3). The certified return receipts provided by Plaintiffs are not signed by Eddie Sr. or Gladys. *See* ECF No. 19-1, Ex. G. Accordingly, and given the Corleys' assertion that the mail was sent to the wrong address, the Court finds that Plaintiffs have not met their burden to show completed service under New Mexico's rules. *See Schneider Nat., Inc. v. State, Tax'n & Revenue Dep't*, 144 P.3d 120, 124 (N.M. Ct. App. 2006) (recognizing that the party attempting service by mail has the burden of proving effective service); *Franklin v. Access Corr.*, No. A-1-CA-41658, 2025 WL 2306683, at *3 (N.M. Ct. App. Aug. 11, 2025) (finding that service was not completed under Rule 1-004E(3) where the plaintiff "had not complied with the service rules by obtaining a signature from a person authorized to accept service, as required for mail service").

Third, and finally, information available concerning this litigation in the Corley Nissan bankruptcy does not excuse otherwise ineffective service. Plaintiffs assert that Eddie Sr. and

10

Gladys had notice of this action from bankruptcy filings. Opp. at 5. For one thing, the Corleys have submitted significant evidence that they were not involved in the bankruptcy proceedings. *See* ECF No. 16-2 ¶¶ 29–30 (stating that Eddie Sr. had little to no involvement in Corley Nissan for several years prior to the bankruptcy); *id.* ¶¶ 35–37 (stating that Gladys was never involved in Eddie Sr.'s businesses and was suffering from dementia by the time of the bankruptcy). Indeed, the bankruptcy filings were not signed by Eddie Sr. or Gladys but rather their daughter Debora. *See, e.g.*, *In re Corley Nissan, LLC*, 23-10975 (Bankr. D.N.M. Oct. 31, 2023), ECF No. 2; *In re Corley Nissan, LLC*, 23-10975 (Bankr. D.N.M. Nov. 15, 2023), ECF No. 16. For another, "even where '[d]efendants have notice of the lawsuit against them, actual notice to the defendant[s] is not the equivalent of proper service of process.'" *Campbell v. Internal Revenue Serv.*, No. 20-3100, 2020 WL 6042282, at *4 n.1 (D.N.J. Oct. 13, 2020) (first alteration in original) (citation omitted)); *see also Imming v. De La Vega*, 535 P.3d 693, 695 (N.M. Ct. App. 2023) ("New Mexico has long held that actual knowledge of a lawsuit is not a substitute for service of process." (citation omitted)). Accordingly, any notice to Eddie Sr. and Gladys as a result of the Corley Nissan bankruptcy proceedings does not rectify the otherwise ineffective attempts at service of process. And given that Plaintiffs have failed to show that they effectuated proper service on Eddie Sr. and Gladys, the default judgment is void against them.[5]

---

[5] Defendants alternatively argue that the clerk's default judgment was improper because the claim for damages was not for a sum certain. Br. at 10–14. Under Rule 55(b)(1), the clerk may only enter a default judgment if "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation" and the plaintiff provides "an affidavit showing the amount due." Although the Court already determined that the default judgment is void for lack of proper service, the clerk's default judgment also appears improper because Plaintiffs' motion failed to explain how it calculated its damages. Plaintiffs asserted that Defendants were required to sell 4,950 products in a period at a cost of $453 per product, which it claims totals $2,246,260.00. ECF No. 11-1 ¶ 14. But 4,950 multiplied by $453 is $2,242,350. Further, Plaintiffs asserted that the Defendant Entities failed to sell 3,658 of those products and therefore owed Plaintiffs $1,657,235.00. *Id.* ¶¶ 15–16. Yet 3,658 multiplied by $453 is $1,657,074. Based on these

11

ii.     *The Corleys Brought Their Motion in a Reasonable Time*

Plaintiffs further argue that Eddie Sr. and Gladys unreasonably delayed bringing this motion, which they filed slightly under two years after the entry of the default judgment. Opp. at 5–6; *see also* ECF Nos. 12, 16. A motion under Rule 60(b)(4) must "be made within a reasonable time." Fed. R. Civ. P. 60(c)(1); *see also Coney Island Auto Parts Unlimited, Inc. v. Burton*, 607 U.S. 155, 162 (2026). "What constitutes a 'reasonable time' under Rule 60(b) is to be decided under the circumstances of each case." *Gallagher v. Farm Fam. Ins. Co.*, No. 14-2533, 2016 WL 158520, at *2 (D.N.J. Jan. 12, 2016) (citation omitted).

The circumstances here show that the Corleys moved within a reasonable time to vacate the default judgment. They assert that they were never properly served, are elderly, and in poor health. *See* ECF No. 16-2 ¶¶ 6–7, 18–23, 35–37. Plaintiffs respond that Eddie Sr. and Gladys were on notice of this matter in 2023, as the litigation was referenced in the Corley Nissan bankruptcy in New Mexico. Opp. at 6. But again, the record does not show that the Corleys were at all involved in that bankruptcy or had notice of the default judgment through submissions in those proceedings. See ECF No. 16-2 ¶¶ 6–7, 29, 34–37. And as discussed above, their daughter Debora signed the bankruptcy filings. *See, e.g.*, *In re Corley Nissan, LLC*, No. 23-10975 (Bankr. D.N.M. Oct. 31, 2023), ECF No. 2; *In re Corley Nissan, LLC*, 23-10975 (Bankr. D.N.M. Nov. 15,

---

discrepancies, Plaintiffs did not provide "sufficient evidence to demonstrate [their] entitlement to a sum certain." *See Liberty Mut. Ins. Co., Inc. v. Mentzer*, No. 23-1221, 2024 WL 289340, at *1 n.1 (M.D. Pa. Jan. 25, 2024) (noting that a sum could not be made certain by computation because the plaintiff "fail[ed] to explain how it calculated its claim" to a specific amount of damages); *Lubin, Sarl, a French Co. v. Lubin N. Am., Inc.*, No. 13-2696, 2014 WL 11955396, at *1 (N.D. Ga. Apr. 10, 2014) (stating that a party was not entitled to a clerk's entry of default judgment where it "failed to explain how its total damages were calculated"); *Frenchans LLC v. Vestige LLC*, No. 22-241, 2023 WL 3952432, at *1 (D. Ariz. Jan. 25, 2023) (noting that the court had vacated the clerk's default judgment as improper because the plaintiff's damage claim was not a sum certain or a sum that could be made certain by computation).

2023), ECF No. 16. In these circumstances, the Corleys did not unreasonably delay bringing the instant motion. *Ramada Worldwide Inc. v. Shriji Krupa, LLC*, No. 07-2726, 2013 WL 1903295, at *2, 4–6 (D.N.J. Apr. 17, 2013) (finding reasonable a delay of approximately two years between the issuance of a default judgment and the defendant's first motion to vacate the judgment where the defendant was never properly served), *report and recommendation adopted*, 2013 WL 1903293 (D.N.J. May 7, 2013); *see also Liberty Place Retail Assocs., L.P. v. Michel Perfume Shoppe, Inc.*, No. 13-6111, 2014 WL 1976919, at *1 (E.D. Pa. May 15, 2014) ("[D]efault judgments are not favored and doubtful cases ought to be resolved in favor of the party moving to set aside default judgment in order to decide the case on its merits.").

In sum, the default judgment is void as to Eddie Sr. and Gladys for lack of proper service of process. Additionally, they brought this motion within a reasonable time under Rule 60(c). Accordingly, the Corleys' motion to vacate the default judgment is granted.

### B. Motion to Set Aside the Default Under Rule 55(c)

The Corleys also move to vacate the default under Rule 55(c) for good cause. Br. at 14–21. A court may set aside a default in its discretion by weighing "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; [and] (3) whether the default was the result of the defendant's culpable conduct." *Werremeyer v. Shinewide Shoes, Ltd.*, No. 19-10228, 2022 WL 20853538, at *2 (D.N.J. Apr. 29, 2022) (citation omitted); *see also Olivia B. ex rel. Bijon B. v. Sankofa Acad. Charter Sch.*, No. 14-867, 2014 WL 5639508, at *4 (E.D. Pa. Nov. 4, 2014) ("[D]efaults are disfavored by courts because they avert a decision on the merits.").

First, Plaintiffs have not shown that they will be prejudiced if the Court sets aside the default. "[T]he prejudice requirement compels plaintiffs to demonstrate that [their] claim would be materially impaired because of the loss of evidence, an increased potential for fraud or collusion, substantial reliance on the entry of default, or other substantial factors." *HydroWorx*

*Int'l, Inc. v. Echelon Fitness Multimedia, LLC*, No. 25-689, 2025 WL 3091698, at *3 (M.D. Pa. Nov. 5, 2025) (citation omitted). Plaintiffs put forth no indication that they would be materially impaired because evidence was lost in the two and a half years since the default was entered. *See Georges v. McElroy*, No. 21-17394, 2024 WL 3791442, at *2 (D.N.J. Aug. 13, 2024) (recognizing that "Plaintiff may still pursue his claims, which arise from events occurring" several years before the entry of default). Plaintiffs' primary contention is that they will suffer prejudice because they have invested resources into recording and enforcing the judgment, Opp. at 11, but "cost and delay alone cannot establish prejudice." *See Olivia B.*, 2014 WL 5639508, at *4. As they have not shown an "inability to litigate [their] claims in a material way nor whether relevant evidence [has] become lost or unavailable, this first factor weighs in favor of setting aside the entry of default." *Daughtry v. Kauffman*, No. 17-442, 2019 WL 118600, at *2 (M.D. Pa. Jan. 7, 2019):

Second, the Corleys have a meritorious defense. A party sets forth a meritorious defense if the "allegations of [a party's] answer, if established on trial, would constitute a complete defense to the action." *Barrett v. Tri-Coast Pharmacy, Inc.*, 518 F. Supp. 3d 810, 829 (D.N.J. 2021) (citation omitted). All this requires is showing that the defense "at least has merit on its face." *Brennan v. Century Sec. Servs.*, No. 21-1678, 2022 WL 3686542, at *4 (M.D. Pa. Aug. 25, 2022) (citation omitted).

The Corleys provide sufficient assertions that they did not sign or authorize anyone to sign on their behalf the guarantees at issue. At the time those documents were executed, they were not communicating via email, Eddie Sr. had been retired from the business involved in the underlying agreements for several years, and Gladys, who was never involved in the car dealerships, was suffering from dementia. ECF No. 16-2 ¶¶ 34–37, 40–41. Plaintiffs do not dispute this. Instead, they contend that Carolyn Corley signed the guarantees electronically on her parents' behalf and

14

that she was authorized to do so as one of the potential co-trustees of her parents' trust.  ECF No. 19-1 ¶¶ 10–11 & Ex. A.  But the Court notes that Plaintiffs do not allege that Eddie Sr. and Gladys guaranteed the contracts with assets of their trust, *see generally* ECF No. 1, and the guarantees do not indicate that Eddie Sr. and Gladys were (purportedly) entering into the agreements on behalf of the trust.  *See* ECF No. 16-2, Ex. A.  And whether Carolyn had authority to bind that trust in an agreement does not bear on her authority to bind her parents individually.  *See* Restatement (Third) of Trusts § 85(1) ("In administering a trust, the trustee has . . . power[] over [the] trust property . . . .").   Plaintiffs point to no other indication that the Corleys authorized Carolyn to execute the documents on their behalf.  *See St. James Apartments, LLC v. Coinmach Corp.*, No. 10-6778 MAS, 2013 WL 3930096, at *5 (D.N.J. July 30, 2013) (noting that "the actions of the principal . . . determine whether or not" an individual has the authority to bind the principal).  Given that Eddie Sr. and Gladys have put forth evidence that they did not enter into the relevant agreements, they have shown a meritorious defense to Plaintiffs' claims.  *See Szelc v. Stanger*, No. 08-4782, 2011 WL 1467187, at *4 (D.N.J. Apr. 18, 2011) (recognizing that a contract may be set aside as void if a party's signature was forged); *Steele v. Galles Chevrolet*, No. A-1-CA-39168, 2023 WL 2495547, at *1 (N.M. Ct. App. Mar. 14, 2023) (stating that a "legally valid, enforceable contract requires . . . acceptance").

Third, the Corleys were not culpable in the entry of the default against them.  "To constitute culpable conduct, a defendant's failure to timely answer a complaint must be willful or in bad faith."  *Brennan*, 2022 WL 3686542, at *4.  There is no indication that the Corleys' failure to appear at the outset of this litigation was willful or in bad faith.  As discussed above, they were not properly served in this action.  *See Uber Driver Partner Emery v. Uber Techs. Inc.*, No. 20-5156, 2020 WL 7770248, at *5 (D.N.J. Dec. 30, 2020) (finding no culpable conduct on the defendant's

part where the plaintiff had not properly served the defendant).  Accordingly, this factor weighs in favor of setting aside the default.

In sum, all three factors support setting aside the default.  Thus, for good cause shown, the Court will grant the Corleys' motion under Rule 55(c).

## III.    CONCLUSION

Accordingly, for the reasons stated above, **IT IS** on this 16th day of July, 2026;

**ORDERED** that the motion of Eddie B. Corley, Sr. and Gladys M. Corley to vacate the clerk's default judgment and set aside the clerk's entry of default (ECF No. 16) is **GRANTED**; and it is further

**ORDERED** that the Clerk's Office is directed to **RE-OPEN** this matter; and it is further

**ORDERED** that within twenty-one (21) days of the entry of this Opinion and Order, Eddie B. Corley, Sr. and Gladys M. Corley shall file a responsive pleading.

**SO ORDERED.**

*s/ Claire C. Cecchi*
_____
**CLAIRE C. CECCHI, U.S.D.J.**